Argued June 6, affirmed December 20, 1973, petition for
rehearing denied January 22, 1974

# KIRSCHBAUM, *Respondent, v.* ABRAHAM, *Appellant.*

517 P2d 272

*John W. Burgess,* Special Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General.

*Carl R. Neil,* Portland, argued the cause and filed a brief for respondent.

McALLISTER, J.

Petitioner Kirschbaum brought this proceeding in the Circuit Court for Multnomah County praying for a writ of mandamus ordering the defendant Philip T. Abraham, a judge of the District Court for Multnomah County to appoint an attorney to represent petitioner on the charge of driving a vehicle while under the influence of intoxicating liquor pending against petitioner in said district court. The circuit court entered an alternative writ of mandamus to which de-

fendant answered. After a trial the court entered a peremptory writ commanding the defendant to appoint counsel to represent petitioner on said charge. Defendant appeals. We affirm.

At the outset it will help to clarify the nature of this proceeding and our scope of review. This court has said that a mandamus proceeding is an action at law or in the nature of a law action. *Nelson v. Baker et al,* 112 Or 79, 227 P 301, 228 P 916 (1924); *Beard v. Beard,* 66 Or 512, 133 P 797, 134 P 1196 (1913); 52 Am Jur 2d, Mandamus §§ 4, 490; S. S. Merrill, Law of Mandamus 2 (1892) § 3.

The legal nature of this proceeding is confirmed by the statute authorizing this appeal which states:

"From the judgment of the circuit court * * * directing a peremptory mandamus, an appeal may be taken to the Supreme Court *in like manner and with like effect as in an action.*" (Emphasis added.) ORS 34.240.

In reviewing the judgment in an action we are bound by the findings of the trial court if they are supported by the evidence. *Higgins v. Insurance Co. of N. America,* 256 Or 151, 469 P2d 766 (1970); *Brownsville Particle Board, Inc. v. Overhead Door Company,* 244 Or 424, 417 P2d 1019 (1966).

The defendant does not challenge the jurisdiction of the court below nor its authority to enter a peremptory writ if it is justified by the findings.

■ On appeal the defendant presents three questions or contentions which are combined under one general assignment of error. We will consider these three questions seriatim.

Defendant's first question is presented as follows:

"Where a circuit court finds that a district court has not determined a matter within its discretion, is it error for the circuit court to issue a peremptory writ of mandamus dictating how the district court should decide the matter?"

The fallacy of this question is exposed by a glance at defendant's answer which admits that Judge Richardson on one occasion and Judge Abraham on two occasions had refused to appoint an attorney to represent petitioner. The trial judge called the attention of defendant's counsel to these formal admissions in defendant's answer. Thereafter the defendant testified in the court below that he had twice denied petitioner's request for an attorney and gave the reasons on which he based his decision. A suggestion that a court has not exercised its discretion when it has ruled and twice reaffirmed its ruling can not be taken seriously.

The defendant's second question is stated thus:

"Is it error for a judge, in determining whether a defendant is 'without means and is unable to obtain counsel,' to disregard evidence that the defendant may have been able to obtain counsel but refused to do so?"

This portion of the assignment of error is equally devoid of merit. The trial court found that petitioner "was financially unable to employ an attorney without substantial hardship to himself or his family." The finding was supported by substantial evidence that the usual fee charged by attorneys in Portland for defending a person charged with DUIL was $250 or more and that attorneys usually required the fee or a substantial portion thereof in advance. The other evidence included petitioner's testimony concerning the fees demanded by attorneys he talked to about representing him.

Defendant relies solely on the testimony of Alvin L. Andrews, an attorney to whom petitioner had been referred by the Oregon State Bar, that he offered "to work something out" concerning the payment of his fee. Andrews testified that he demanded a fee of $250 in cash to represent petitioner and when informed that petitioner could not pay that fee told petitioner to see what he could do and call back. According to Andrews when petitioner called back and said "he didn't have the money" Andrews said:

"A At that point he indicated that he hadn't been able to raise the $250.00 fee and I asked him if he'd worked at it, and he said, 'Yes.' I suggested that he come in—first, I then asked if he was working and he said, 'Yes.'

"I said, 'Well, in that case, maybe we can depart from the usual procedure, and I suggest you come in and we can work something out.

"Q Did you indicate to him at that time that you then would not require a fee in advance?

"A Well, I didn't go into specifics as to any particular amount, because I didn't have one in mind. I wanted to talk to him face to face and find out more about what his problem was, what his situation was.

"I was offering then to work out something on a payment arrangement, but we didn't go into specifics.

"Q What did you mean, 'depart from the usual practice?'

"A The usual practice on a DUIL where I do not know the people is to require the fee to be paid in advance, but I was willing to depart from that practice because he was unable to raise the fee in cash by his statement.

"Q All right. Mr. Andrews, what was his response to that?

"A He said, 'Well, would this really be neces-

sary.' Because, he said, that he had been to legal aid and they had told him if he could not get an attorney or if he had five attorneys turn him down, that he could get—could get free counsel then from them.

"Q What did you do?

"A I said, 'Well, in that case, the best thing I can do for you is tell you that I have to abide by my usual procedure of asking for the full $250.00. So in that light,' I said, 'I'll have to have the full fee in advance.'"

■ Defendant argued, in effect, that the trial judge was required to ignore all the other evidence and as a matter of law find that petitioner could have employed Andrews at a fee and payable in terms that petitioner could pay. This is not a persuasive argument. Andrews was called by defendant but did not testify that he would have represented petitioner for a fee of less than $250 and, if so, how much less and did not state what part of his fee he would have required in advance and in what instalments he would have required the balance of his fee to be paid and what security he would have required. The trial judge was entitled to find in accordance with the other substantial evidence and was not required to find as a matter of law that Andrews would have represented petitioner at a fee that petitioner could pay.

Defendant states his third assignment of error as follows:

"Where the facts do not indicate as a matter of law that a defendant is 'without means and is unable to obtain counsel,' is it error for a judge to decline to appoint an attorney to represent the defendant and to allow him time before trial within which to attempt to obtain an attorney?"

■ By this assignment defendant seems to argue that defendant did not err in refusing to appoint an attorney because "the facts do not indicate as a matter of law that" petitioner is "without means and is unable to obtain counsel." Although the assignment is ambiguous as to what "facts" it refers to we assume it refers to the "facts" on which the defendant based his refusal to appoint an attorney. This is a strange assignment when it is conceded by defendant that he did not give petitioner a hearing and obviously did not know whether petitioner was without means and was unable to employ counsel. Defendant testified that he relied on three different things—(1) a letter from petitioner to Judge Richardson stating that petitioner was working and clearing $76 a week; (2) that Judge Richardson had apparently denied petitioner's request for appointment of counsel; and (3) that petitioner had posted cash bail of $305. Defendant testified that "I felt that under those circumstances he was not entitled to a court appointed attorney." Judge Richardson could not recall petitioner's appearance before him and if defendant asked Judge Richardson why he declined to appoint an attorney for petitioner defendant did not mention such inquiry in his testimony.

Under this state of the record it is apparent that defendant, in the absence of a hearing or other inquiry, did not know whether or not petitioner had any resources with which to employ an attorney and did not know whether petitioner was in fact destitute.

Defendant's assignment of error seems to argue that the burden was on petitioner to establish *as a matter of law* that he was entitled to an appointed attorney. This is a rather heavy burden to impose on an accused who is not given a hearing.

The defendant in determining petitioner's rights under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 11 of the Oregon Constitution applied an impermissible standard and the trial court so found. The trial judge found that the appropriate standard was that recommended by the American Bar Association's "Standards Relating to Providing Defense Services" (Approved Draft, 1968), § 6.1, reading as follows:

> "Counsel should be provided to any person who is financially unable to obtain adequate representation without substantial hardship to himself or his family. Counsel should not be denied to any person merely because his friends or relatives have resources adequate to retain counsel or because he has posted or is capable of posting bond."

The above standard has since been incorporated into our law by Chapter 836, § 135, Oregon Laws 1973.

The trial judge found that the above standard was not applied by the defendant and further found that petitioner, when he requested defendant to appoint counsel for him, "was financially unable to employ an attorney without substantial hardship to himself or his family."

.■ Normally the circuit court would have remanded this matter to defendant with instructions to give petitioner a hearing and to determine under the proper standard whether he was entitled to appointed counsel. However, the attitude of the defendant made this alternative unacceptable in this case.

The defendant testified that if all the evidence concerning petitioner's financial condition which was taken in circuit court had been before him in the district

court he would still have refused to appoint an attorney for petitioner. On direct examination he testified:

"Q  \* \* \* The question is: assuming the statements that the petitioner has made relating to his financial assets and his liabilities, at the time, had you known of these things at the time, would you have appointed him a lawyer?

"A  If I understand you correctly, if I had known of those things at the time I made my decision?

"Q  That's correct.
"A  In addition to these other factors that I already knew?

"Q  That's correct.
"A  No, I would not have."

On cross-examination, in response to a hypothetical question containing the facts in evidence of petitioner's finances, defendant again testified that he would deny counsel. In view of the continued refusal of defendant to appoint a lawyer in spite of all the evidence received in the circuit court a remand would be futile.

Since the findings of the circuit court are all supported by substantial evidence, we are bound by them and the judgment of the court below is affirmed.

DENECKE, J., specially concurring.

I concur with the majority decision; however, I may differ on the scope of our review.

The majority opinion states the scope of our review is to determine whether there is evidence supporting the circuit court's findings. This is an appeal from a mandamus proceeding in the circuit court directed at a ruling of the district court. Ordinarily, in such a situation I am of the opinion that the scope of

review of the circuit court and the appellate court is to decide whether there was any evidence before the district court to support the district court's ruling. In *State ex rel Ware v. Hieber*, 267 Or 124 at 127, 515 P2d 721 (1973), we so held:

"Based upon the nature of mandamus and the relation of mandamus to appeal, we conclude that our function is to decide whether there was any evidence to substantiate the circuit court's ruling. \* \* \*."

That was an original mandamus proceeding in this court in which we were petitioned to mandamus the circuit court.

In the present case, however, this is not the issue because an inadequate opportunity was offered the petitioner to present his evidence of indigency. Normally, this would result in the court remanding the case to the district court to make further inquiry and make a ruling; however, I agree with the majority that a remand would be a useless act in this case.

It is not necessary to address ourselves to the question of what is an adequate inquiry. Section 136, ch 836, Oregon Laws 1973, is applicable to future cases before the district court and provides how and in what form the accused shall present the evidence of his indigency.

O'CONNELL, C. J., joins in this specially concurring opinion.