JAMES, J.
*46 Petitioner submitted a petition to the Department of Land Conservation and Development (DLCD) for an order of enforcement. DLCD rejected the petition as materially deficient. Petitioner sought judicial review of that decision in circuit court under ORS 183.484 as an order in other than a contested case. On judicial review, the court entered judgment remanding DLCD's order to the agency for further proceedings on the merits of the petition. ORS 183.484(5). Both petitioner and DLCD challenge that judgment. We reject petitioner's assignments of error on appeal without discussion and write solely to address DLCD's cross-appeal. DLCD argues that the circuit court erred in remanding for further proceedings on the merits. We agree and, therefore, reverse on the cross-appeal.
"We review the circuit court's judgment to determine whether the court correctly reviewed the agency's decision under the standards of ORS 183.484(5)." Papworth v. DLCD , 255 Or. App. 258, 265, 296 P.3d 632 (2013). "In practical effect, that means that we directly review the agency's order for compliance with the standards set out in ORS 183.484(5)." G.A.S.P. v. Environmental Quality Commission , 198 Or. App. 182, 187, 108 P.3d 95, rev. den. , 339 Or. 230, 119 P.3d 790 (2005). Therefore, we-like the circuit court-review DLCD's order rejecting the petition for enforcement as materially deficient for legal error. Papworth , 255 Or. App. at 265, 296 P.3d 632 ; see Ericsson v. DLCD , 251 Or. App. 610, 620, 285 P.3d 722, rev. den. , 353 Or. 127, 295 P.3d 640 (2012) ("For the most part, that means that the court directly reviews the agency's order under the standards set out in ORS 183.484(5)."). The factual and procedural background follows below.
A landslide damaged a private road in petitioner's residential subdivision. Petitioner sent numerous letters to Douglas County officials warning of the hazardous condition on the road due to the landslide. Douglas County advised petitioner that the damaged road was a private road and that the matter *433 was, therefore, a civil matter between petitioner, his private road association, and the developer of his subdivision. It stated that it would take no action. Petitioner notified Douglas County of his intent to submit a petition *47 for an enforcement order from the Land Conservation and Development Commission (the commission) under ORS 197.320(6).[1]
Petitioner subsequently submitted a petition to DLCD for an enforcement order. Petitioner alleged in the petition notice that Douglas County had failed to take action in response to his numerous contacts concerning the deterioration of the road. He specifically alleged:
"I informed the [Douglas County] Planning Department and the District Attorney about the hazard and requested code enforcement, these notifications were at first ignored and then met with a blanket denial that any code violations were present although * * * such code violations are readily apparent upon visual inspection and upon review of the County's file yet no code enforcement action has been taken and apparently none is intended. The abovementioned acts, events and facts constitute both a pattern and a practice of decision making that violates an acknowledged comprehensive plan or land use regulation pursuant to ORS 197.320(6)."
Petitioner identified ORS 197.320(6) as the basis for his petition for enforcement. DLCD rejected the petition as materially deficient because it failed to allege a pattern or practice of noncompliant land use decisions by the local government. In its letter, DLCD explained:
"The department finds that the petition is materially deficient and the petition is rejected pursuant to OAR 660-045-0070(3).
"* * * * *
"State statute empowers the Land Conservation and Development Commission to enforce compliance with the statewide planning goals, acknowledged comprehensive plan provisions and land use regulations in local land use decision-making. You petitioned the commission to use this authority to order Douglas County to enforce conditions placed on road construction within a subdivision as *48 required by the Douglas County Land Use and Development Ordinance.
"* * * * *
"In this case, the materials contained in the petition claim that Douglas County has engaged in a pattern and practice of decision making that do not comply with local land use regulations; there is no claim that the local land use regulations fail to comply with applicable planning goals.
"In its analysis, the department noted a difference between a land use decision and the implementation of that decision. A 'land use decision' is defined in state statute. In this case, the petition does not allege the county made a land use decision that fails to comply with applicable regulations. The only land use decision involved is the approval of the subdivision (Douglas County Planning Department File No. 01-074), which the petition does not accuse of being noncompliant. Instead, subsequent actions (or inactions, if you will) by the county led to your request for enforcement.
"The definition of 'pattern of decision making' is 'a mode, method, or instance of decision making representative of a group of decisions,' while the definition of a 'practice of decision making' is 'a series or succession of decisions.' (See OAR 660-045-0020 ). Non-enforcement of a condition placed on an approval is not a 'decision' as used in these definitions.
"Since there is no land use decision alleged to be violated, the department cannot determine that Douglas County has engaged in a 'pattern' or 'practice' of decision making that does not comply with its development *434 regulations. This petition is materially deficient in this regard."
(Footnotes omitted.)
Petitioner then sought judicial review in Douglas County Circuit Court of the rejection of his petition. The court issued a general judgment remanding the order to DLCD with instructions to proceed in processing the petition on the merits. In its cross-appeal of that decision, DLCD argues that the circuit court erred in remanding the order to the agency with instructions to proceed because, as a matter of law, the petition for enforcement was materially deficient in two significant ways. First, the impetus of the petition-Douglas County's decision to take no action in response to *49 petitioner's initial requests-was not a "land use decision" as that term is defined in ORS 197.015(10) and, accordingly, no pattern or practice of noncompliant land use decisions was alleged. Second, there was no comprehensive land use plan or regulation that required the county to take action in the manner petitioner demanded and, therefore, no authority to issue an order of enforcement under ORS 197.320(6).
Petitioner responds that Douglas County's decision to take no action on his initial requests was indeed a land use decision. Moreover, petitioner asserts that Douglas County's failure to take action was a violation of Douglas County's Land Use and Development Ordinances and when a county fails to enforce a land use regulation, DLCD is the agency that reviews those alleged violations. We agree with DLCD's determination that there is no land use decision at play here and, thus, conclude that the petition was properly rejected as materially deficient in accordance with ORS 197.320(6) and OAR 660-045-0070.
We begin by briefly addressing the procedures that control in this case, as set out by statute and rule. Then, we will discuss how petitioner's requests fit within that framework. The commission is charged with ensuring compliance with comprehensive land use plans and statewide planning goals. Accordingly, the commission can issue an order pursuant to ORS 197.320(6) requiring a local government to take action to bring its land use decisions into compliance with applicable land use requirements.[2] Before issuing an enforcement order, the commission must determine whether *50 a local government has engaged in violations of an acknowledged comprehensive plan or land use regulations by looking for evidence in the record of a pattern or practice of noncompliant land use decisions.[3]
A "land use decision" includes:
"(A) A final decision or determination made by a local government or special district that concerns the adoption, amendment or application of:
"(i) The goals;
"(ii) A comprehensive plan provision;
"(iii) A land use regulation; or
"(iv) A new land use regulation;
"* * * * *
*435 "(b) Does not include a decision of a local government:
"(A) That is made under land use standards that do not require interpretation or the exercise of policy or legal judgment[.]"
ORS 197.015(10).
As part of the petition process, a person must notify the local government of the alleged pattern or practice of noncompliance that informs the basis of the petition for an enforcement order. As relevant here, notice to the local government must request:
"(A) Revisions to the local comprehensive plan, land use regulations, special district cooperative or urban service agreement or decision-making process which is the basis for the order; or
"(B) That an action be taken regarding the local comprehensive plan, land use regulations, special district *51 agreement or decision-making process that is the basis for the order."
ORS 197.319(1)(b). The local government can either take corrective action or take no action. OAR 600-045-0050.
When a local government makes the determination that no action is required, that is an example of "a decision of a local government [that] is made under land use standards that do not require interpretation or the exercise of policy or legal judgment." ORS 197.015(10)(b)(A). As we have noted, when a local government determines no action is required as to a previously imposed land use condition, regulation, or decision, that determination does not necessarily involve an exercise in judgment, application of land use regulations, or interpretation of policy or law. Rather, we look for factors and circumstances informing whether the local government engaged in interpretation and legal judgment. For example, as we stated in Mar-Dene Corp. v. City of Woodburn ,
"[in cases where a land use decision was made] the cities' decisions in those cases had the direct effect of determining whether a use could be conducted, and the decisions were responsive to applications or other filings that sought determinations about whether the uses were permissible. Here, conversely, the city has not directly allowed or proscribed anything: rather, it has held that it will take no action to enforce a previously imposed developmental condition that has not been fully satisfied, and the satisfaction of which is a prerequisite to the issuance of a building permit that the city has already issued for a development that has already been built."
149 Or. App. 509, 515, 944 P.2d 976 (1997). At this point, if the person finds that the local government's response is inadequate, the person may initiate a petition for an enforcement order. OAR 660-045-0050 - 660-045-0060.
Once a person initiates the enforcement order process, DLCD reviews the petition. OAR 660-045-0070. By rule:
"If the petition (including any information added under the provisions of Section 2) fails to meet the requirements of ORS 197.319 to 197.[3]24 and this division in a way that substantially prejudices the affected local government or *52 district or is materially deficient, the department shall reject the petition."
OAR 660-045-0070(3). If DLCD rejects the petition, then the commission "shall not consider" it. OAR 660-045-0070(4).
We turn now to how that procedure was applied in petitioner's case. After Douglas County took no action in response to petitioner's numerous complaints regarding his residential subdivision's landslide and resulting road damage, petitioner initiated the process for an enforcement order. Petitioner notified Douglas County and DLCD of his intent to petition DLCD and the commission for an enforcement order against Douglas County for alleged noncompliance with the private road land use ordinances as a result of the landslide road damage. In particular, petitioner wrote that
"[t]his notice pertains to my prior correspondence regarding building code enforcement, the immediate danger is the landslide area on Amanda Street which continues to deteriorate.
"* * * * *
"I informed the [Douglas County] Planning Department and the District Attorney *436 about the hazard and requested code enforcement, these notifications were at first ignored and then met with a blanket denial that any code violations were present although * * * such code violations are readily apparent upon visual inspection and upon review of the County's file yet no code enforcement action has been taken and apparently none is intended. The abovementioned acts, events and facts constitute both a pattern and a practice of decision making that violates an acknowledged comprehensive plan or land use regulation pursuant to ORS 197.320(6)."
Petitioner stated that the basis for his petition for enforcement was ORS 197.320(6). That provision concerns a pattern or practice of noncompliant land use decisions. Allegations of a pattern or practice of noncompliant decisions requires a group or series of decisions that evince a mode, method, or instances of noncompliant land use decision making. OAR 660-045-0020(10)-(11). Petitioner alleged, "The local government has engaged in a pattern and practice of *53 decision making that violates and fails to enforce applicable land use regulations." Petitioner further alleged:
"During construction [of Amanda Street] examples of active noncompliance are to be found in a review of the [Morgan Ridge] developer's engineering reports (attached) which were apparently accepted as sufficient and complete when in fact no factual findings regarding the [Douglas County Land Use and Development Ordinances] were included.
"Regarding more recent examples, last winter a large portion of Amanda Street washed out and I provided notifications (attached) and requests for enforcement of building code however my review of the [Douglas County] Planning Department file revealed no evidence that any visual inspection of the site was made by the [Douglas County] Planning Department in response and otherwise such notifications were either not replied to at all or replied to in such a manner as to indicate a determination and decision to not enforce applicable building code."
In response to petitioner's letters, the Douglas County Planning Department wrote:
"You have implied the road system in Morgan Ridge does not comply with County standards. It also appears you wish for the County to take some sort of enforcement action related to recent road damage. Please note that maintenance of the Morgan Ridge road system is not a County responsibility. It is the duty and responsibility of a private association established to own and maintain the private roadways. The Association is noted in deed records related to your property. Concerns about road maintenance, reconstruction or safety would be correctly raised with the private road association, which I believe you are a member.
"The maintenance of your road(s) is not a code compliance issue. The road system was certified as in compliance when constructed. It is now the duty and responsibility of the private road association. Your road improvement and maintenance issue is a private issue.
"The County has no action planned concerning the issues you have raised regarding placing logs, performing excavation, breakdown of the roadbed or road failure. Those issues are the responsibility of the owners of property subject to a part of the private road association."
*54 Petitioner's petition for enforcement with DLCD, in pertinent part, alleged that
"the County has repeatedly ignored its land use regulations, in particular those ordinances governing development on steeply graded land, resulting in one serious landslide already [and] the County repeatedly refused to take any enforcement action despite my requests. Although the County alleges in its April 1, 2013 letter that I refer to nothing recent, my denied requests for enforcement to the County demonstrate a recent and repeated pattern and practice of non-enforcement.
"* * * * *
"I request that the Commission adopt an enforcement order requiring the County to enforce the abovementioned code requirements in the Morgan Ridge and other similarly situated steep slope developments.
*437 The County should be required to thoroughly inspect the roads in Morgan Ridge and other recent steep slope developments for compliance with applicable building code. The County should be required to review for accuracy and completion all developer engineering certifications in Morgan Ridge and other recent steep slope developments. Where non-compliant construction is found, the County should be required to enforce compliance, and the County should be required to develop a plan and timetable to accomplish enforcement."
Petitioner also noted, in relation to the requirement that a pattern or practice of noncompliant land use decisions must be alleged, that "my experience is limited to my particular development, Morgan Ridge, [although] the County's lack of attention to code enforcement makes likely the existence of other similarly dangerous conditions." Finally, as required by OAR 660-045-0060(2)(e)(A) -pertaining to records of noncompliant actions taken by the affected local government, such as approvals, permits, rezonings, plan amendments, and amendments of land use regulations-petitioner included copies of "the County's decision requiring [the Morgan Ridge] developer's engineering certification and the incomplete certifications accepted as sufficient by the County" as well as "[c]opies of my letters to the County requesting building code enforcement."
*55 DLCD concluded that there was no land use decision alleged from which the commission could determine whether Douglas County engaged in a pattern or practice of decision making that did not comply with local land use regulations. Without any alleged land use decisions, DLCD rejected the petition as materially deficient. OAR 660-045-0070(3). DLCD ended its letter, "This alleged failure to enforce (which the department does not accept or reject) is not a land use decision, so the proper avenue for relief is not through a land use proceeding."
We agree with DLCD. Douglas County's determination that no action was required in response to petitioner's numerous requests to evaluate the Amanda Street landslide damage and to enforce the county land use ordinances applicable to the private subdivision road's initial construction in 2001 was not a land use decision for which petitioner is able to seek relief from the agency. See Mar-Dene Corp. , 149 Or. App. at 515, 944 P.2d 976. Moreover, Douglas County's repeated reiteration of the county's intention to take no action in response to petitioner's numerous letters, requests, and complaints does not demonstrate nor amount to a pattern or practice of noncompliant land use decision making.
Simply, Douglas County's determination that no action was required in response to petitioner's requests was not a land use decision because the county was not required to interpret or engage in the exercise of policy or legal judgment as to the county's land use ordinances. See ORS 197.015(10)(b)(A). The petitioner's numerous letters, requests, and complaints do not, solely because of the number of inquiries, amount to a pattern or practice of noncompliant decision making by the county. DLCD properly determined that petitioner's petition for an enforcement order was materially deficient for failing to allege that Douglas County's inaction demonstrated a pattern or practice of noncompliant land use decision making. Accordingly, the circuit court erred in remanding DLCD's order with instructions to proceed with the petition for enforcement on the merits.
Affirmed on appeal; reversed on cross-appeal.

DLCD receives and processes petitions, reviewing them for, among other things, completeness and whether they are materially deficient. OAR 660-045-0070. Petitions that meet the requirements are submitted to the commission for consideration. OAR 660-045-0080. It is the commission that has the authority to issue enforcement orders. OAR 660-045-0150 ; ORS 197.320 ; ORS 197.335.

ORS 197.320 provides, in relevant part:
"The Land Conservation and Development Commission shall issue an order requiring a local government, state agency or special district to take action necessary to bring its comprehensive plan, land use regulation, limited land use decisions or other land use decisions into compliance with the goals, acknowledged comprehensive plan provisions or land use regulations if the commission has good cause to believe:
"* * * * *
"(6) A local government has engaged in a pattern or practice of decision making that violates an acknowledged comprehensive plan or land use regulation. In making its determination under this subsection, the commission shall determine whether there is evidence in the record to support the decisions made. The commission shall not judge the issue solely upon adequacy of the findings in support of the decisions[.]"

OAR 660-045-0020(9) defines noncompliance as
"a state of not being in compliance with a currently applicable comprehensive plan, land use regulation, special district cooperative agreement, urban growth management agreement, goal, rule, or other regulation or agreement, as described in ORS 197.320(1) to 197.320(10) or in 197.646. The term includes a failure to comply with applicable case law in making a land use decision. The term includes a pattern or practice of decision making that violates an acknowledged comprehensive plan or land use regulation. Noncompliance is the problem that an enforcement order seeks to eliminate through corrective action."